**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICK DIOGENIA, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   CASE NO:  2:2026cv03156-MAK |
| | : |
| COMCAST CABLE | : |
| COMMUNICATIONS | : |
| MANAGEMENT, LLC, et al. | : |
| | : |
| Defendants. | : |

**AMENDED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Comcast Cable Communications Management, LLC ("Comcast Cable"),

Comcast Cable Communications, LLC, Comcast Corporation, Comcast Holdings Corporation

(collectively "Comcast") and Andrew Antonioli (together with Comcast, "Defendants"), by and

through their undersigned counsel, Fisher & Phillips, LLP, hereby submit the following

Memorandum of Law in support of Defendants' Motion to Dismiss Plaintiff's Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).  As explained below, this Court should

dismiss the Complaint because Plaintiff has failed to state a claim upon which relief can be

granted.[1]

I.    **INTRODUCTION**

This is a hostile work environment claim that arises out of the employment relationship

between Plaintiff and Comcast Cable.  Plaintiff worked for Comcast Cable for approximately 22

months, the latter 14 months of which Plaintiff was an inactive employee on a medical leave of

---

[1]    Comcast Cable Communications LLC, Comcast Corporation, and Comcast Holdings Corporation are improperly named as Defendants.

absence.  Plaintiff's hostile work environment claims are based upon some alleged homophobic statements made by his supervisor, AJ Antonioli, when Plaintiff was an active employee -- before Plaintiff began his leave of absence on May 11, 2023.  Comcast denies that Mr. Antonioli made any of these comments, but it understands that this Court will accept the comments as true for purposes of this motion.  On March 31, 2025, Plaintiff filed his Charge of Discrimination, which was 691 days after his last day of active employment.

A lot can happen in 691 days.  In the last 691 days we have seen two Super Bowls, four new Marvel Movies, a Summer and a Winter Olympics, sophomores become seniors, and second year law students become first year attorneys.  Filing a hostile work environment charge can take some time, and the law recognizes that by giving a charging party 300 days to file a charge of discrimination with the EEOC (and 180 days to file with the PHRC).  The law, however, does not permit a party to take 691 days to initiate an administrative claim with the respective government agency.  That is exactly what Plaintiff has done here.  On the face of Plaintiff's Complaint, it took Plaintiff 691 days to initiate an administrative claim regarding his hostile work environment claims.

Comcast respectfully asks this Court to dismiss the Complaint because Plaintiff failed to file his Charge of Discrimination with the EEOC or PHRC within the applicable statute of limitations.  Even if his claims are timely, which they are not, this Court should alternatively dismiss the Complaint because Plaintiff has also failed to allege "severe" or "pervasive" conduct in support of his harassment claim.

2

## II.    PROCEDURAL AND FACTUAL BACKGROUND

### A.  Procedural History

On May 10, 2026, Plaintiff Patrick Diogenia ("Plaintiff") commenced this action when he filed his Complaint.  See Plaintiff's Complaint, a true and correct copy of which is attached hereto as Exhibit A (hereinafter "Exhibit A").  In his Complaint, Plaintiff alleges claims for hostile work environment based on his sexual orientation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act (the "PHRA") arising out of his brief employment with Comcast.  See Exhibit A at ¶¶ 54-71.

On or around the same day he filed his Complaint, Plaintiff has also filed an additional action against Comcast under the Arbitration Agreement that governed his employment.  See Exhibit A at ¶ 11; Plaintiff's Complaint filed under the Arbitration Agreement, a true and correct copy of which is attached hereto as Exhibit B (hereinafter "Exhibit B").  In his Arbitration claim, Plaintiff asserts sexual orientation discrimination and retaliation, disability discrimination and retaliation, failure to accommodate under the Americans with Disabilities Act and the PHRA, and non-payment of short-term disability benefits.  The Arbitration claim focuses upon Plaintiff's termination and Comcast's attempts to accommodate Plaintiff's medical impairment and return him to active employment during his almost 14 months of medical leave, which began on May 11, 2023, and continued through his termination from employment on or about July 3, 2024.

### B.  Relevant Factual History

Plaintiff began working as a Senior Manager for Comcast Cable Communications Management, LLC in September of 2022.  See Exhibit A at ¶ 12.[2]  Plaintiff claims that his supervisor, AJ Antonioli, treated him with "animus," scrutinized his performance in front of his peers, purposefully ignored him in front of his peers, and placed restrictions on him that were not placed on others outside of his protected class.  See id. at ¶¶ 17-24.

Plaintiff further alleges that Mr. Antonioli said to Plaintiff he would be "perplexed and disturbed" if one of his children were gay, called sexual orientations other than heterosexuality "abnormal," and admitted to problems with implicit bias in the past.  See id. at ¶¶ 25-26. Plaintiff also claims that Mr. Antonioli "implied" to him that he knew EEO policies, but there was no changing his management style.  See id. at ¶ 28.  Plaintiff further alleges that Mr. Antonioli framed the separation of Plaintiff's highest ranking LGBTQ acquaintance as having "bailed out."  See id. at ¶ 29.  Plaintiff also avers several interactions with Mr. Antonioli where the latter, without once referencing Plaintiff's sexuality, told Plaintiff he was overqualified, encouraged Plaintiff to quit, asked Plaintiff to dress "less elegantly" and to be more "normal." See Id. at ¶¶ 31-35.

Plaintiff's last day of active employment was May 10, 2023, at which point he began a prolonged medical leave of absence.  See id. at ¶ 46.  Plaintiff, while on leave, submitted an internal complaint about Mr. Antonioli and admits that Comcast found Plaintiff's claims to be unsubstantiated.  See id. at ¶¶ 47-48.  Plaintiff did not return to active employment with Defendants after May 10, 2023.  See generally, Exhibit A.

---

[2]    Defendants set forth the relevant facts as alleged in the Complaint for the purposes of this Motion only and specifically reserve the right to respond to and deny any and all factual assertions and allegations set forth in Plaintiff's Complaint.

On June 10, 2024, Comcast offered Plaintiff an accommodation[3] that would allow him to return to active employment and report to an intermediary supervisor between him and Mr. Antonioli.  See id. at ¶ 49.  This offer was made more than one year after Plaintiff began his leave of absence and therefore more than one year since he had any contact with Mr. Antonioli. Plaintiff, however, refused Comcast's offer to return to active employment, and, instead, insisted that Comcast transfer him to a new job.  See id. at ¶¶ 49-51.  On July 3, 2024, a year and two months after Plaintiff began his leave, Comcast terminated Plaintiff's employment.  See id. at ¶ 52.  Plaintiff does not allege that Mr. Antonioli (or anyone else) engaged in any harassment toward him after he began his leave of absence on May 10, 2023.  See, generally, Exhibit A.

Plaintiff dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") and the Pennsylvania Human Relations Commission (the "PHRC") on July 25, 2025.  See Charge of Discrimination, a true and correct copy of which is attached hereto as Exhibit C (hereinafter "Exhibit C").  On November 3, 2025, Plaintiff wrote a letter to the EEOC alleging that he submitted an intake form to the PHRC on March 31, 2025 and asking, in part, for the recorded filing date of his Charge of Discrimination to be March 31, 2025, which was 691 days after Plaintiff's last day at active employment.[4]  See Plaintiff's November 3, 2025 Letter to the EEOC at pp. 1, 3, a true and correct copy of which his attached hereto as Exhibit D (hereinafter "Exhibit D").

---

[3]    In addition to allowing Plaintiff to report to a different supervisor, Comcast Cable offer many other accommodations to Plaintiff in connection with this effort to return Plaintiff to active employment.

[4]    "In deciding a motion to dismiss, district courts are permitted to consider the charge filed with the EEOC, and related EEOC documents . . ." EEOC v. Geisinger Health, No. CV 21-4294-KSM, 2025 WL 1, at *3 n.4 (E.D. Pa. Oct. 17, 2022) (quoting EEOC v. Bimbo Bakeries USA, Inc., No. 1:09-CV-1872, 2010 WL 598641, at *1 n.2 (M.D. Pa. Feb. 17, 2020).

III.    ARGUMENT

    A.  <u>**Legal Standard for a Motion to Dismiss**</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts are authorized to dismiss all or part of an action based upon a Plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a [plaintiff's] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). Although the pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). Moreover, "a complaint may be dismissed pursuant to Rule 12(b)(6) on statute of limitations grounds if the untimeliness of the complaint is apparent on its face." <u>Minnis v. Baldwin Bros. Inc.</u>, 150 F. App'x 118, 120-21 (3d Cir. 2005) (citing <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n. 1 (3d Cir. 1994).

    B.  <u>**Plaintiff's Claims are Time-Barred.**</u>

Plaintiff did not file his claims in a timely fashion with either the PHRC or the EEOC as required by the PHRA and Title VII. Plaintiff began a leave of absence on May 10, 2023, and he does he plead any facts to suggest he even interacted with Mr. Antonioli during his leave, let alone was subjected to a hostile work environment while he was on leave. In fact, as set forth in Plaintiff's Complaint, all the allegations supporting his hostile work environment claim occurred before Plaintiff initiated his leave of absence on May 10, 2023. As explained below, Plaintiff failed to exhaust his hostile work environment claims in a timely fashion, and his Complaint should be dismissed.

### 1. Plaintiff's PHRC Filing was Untimely

It is well-established that the PHRC requires a charging party to file his/her charge of discrimination within 180 days of the last act of discrimination. "Before filing a PHRA suit, a plaintiff must file a complaint with the PHRC and exhaust the remedies provided for by the PHRA." McCreary v. Adult World, Inc., 729 F.Supp.3d 458, 466 (E.D. Pa. 2024) (citing Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 471 (3d Cir. 2001)). "[W]hen a plaintiff files a discrimination complaint with both the EEOC and the PHRC, the EEOC limitations period increases from 180 to 300 days, but the PHRC limitations period is 180 days." Russo v. Bryn Mawr Trust Co., No. 22-3235, 2024 WL 3738643, at *7 (3d Cir. Aug. 9, 2024) (citing Mandel v. M&Q Packaging Corp., 706 F.3d 157, 164-65 (3d Cir. 2013)).

Here, Plaintiff alleges the PHRC received his dual intake form on March 31, 2025. See Exhibit D, at p. 3. All the allegations in Plaintiff's Complaint related to his hostile work environment claim occurred before Plaintiff's leave of absence, which began on May 10, 2023. See generally, Exhibit A. In fact, there are no allegations in Plaintiff's Complaint, whatsoever, dated on or after October 2, 2024, 180 days prior to March 31, 2025. Therefore, Plaintiff's PHRA claims should be dismissed as untimely.

### 2. Plaintiff's EEOC Filing was Untimely

As this Court previously noted, "Congress requires an employee to exhaust administrative remedies before suing their employer under Title VII . . . . An employee exhausts their administrative remedies by filing a charge with the [EEOC]." Homer v. SAP America, Inc., Civil Action No. 25-5894, 2025 WL 3543621, at *2 (E.D. Pa. Dec. 10, 2025) (citing Hayes v. N.J. Dep't of Human Servs., 108 F.4th 219, 221 (3d Cir. 2024)). "To bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC

within 300 days of the alleged unlawful employment practice." Ahnert v. Lehigh Valley Health Network, No. Civil Action 24-2561, 2025 WL 1194481, at *4 (E.D. Pa. Apr. 24, 2025) (quoting Mandel, 706 F.3d at 165).

Here, Plaintiff must plead at least one act that contributed to a hostile work environment that took place on or after June 4, 2024, which was 300 days before Plaintiff claims his dual-filing intake was received by the EEOC. See Exhibit D at p. 3. Plaintiff alleges only the following two events during this window: (1) "[o]n or around June 10, 2024, Defendants proposed that Plaintiff return to work with an intermediary supervisor between Plaintiff and Defendant Antonioli . . ."; and (2) "[o]n July 3, 2024, Defendants terminated Plaintiff." Exhibit A at ¶¶ 49, 52. Neither action is tied to Mr. Antonioli or Plaintiff's sexual orientation, nor could they be tied to Mr. Antonioli or Plaintiff's sexual orientation. Thus, Plaintiff has failed to allege any acts of harassment within the statute of limitations under Title VII.

### i. Plaintiff's Harassment Claim, as Plead, Cannot Be Based Upon A Time Period In Which He Was Inactive From Employment.

Many courts have held that an employee cannot state a claim of harassment over a period of time when that employee was inactive from employment. A hostile work environment exists "[w]hen the *workplace* is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive *working environment*." Doe v. DeJoy, No. 5:19-cv-05885, 2020 WL 6482545, at *6 (E.D. Pa. Nov. 4, 2020) (emphasis in original) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). In Doe v. DeJoy, the plaintiff was put on leave, and he did not return to active employment during the operative statute of limitations period. See 2020 WL 6482545, at *6. The DeJoy court found that "Doe was not present at or in his workplace so as to suffer from a hostile work environment . . . indeed, he was not working or receiving pay after [the tolling date]

and therefore cannot be said to have had a *work environment*." Id. (emphasis in original).[5] The Third Circuit reached an analogous conclusion in Mercer v. SEPTA, where it held the plaintiff could not point to any incidents contributing to a hostile work environment within the statute of limitations period because his alleged harasser was transferred to a different location and the plaintiff did not return to active employment after his suspension. See 608 F. App'x 60, 64 (3d Cir. 2015).

Here, within the 300-day period before filing his charge with the EEOC, Plaintiff was not subject to a hostile work environment because he was on a leave of absence as of May 10, 2023. See Exhibit A at ¶ 46. Much like the plaintiffs in Doe and Mercer, Plaintiff was not at the workplace and, further, alleges no contact with Mr. Antonioli during his leave of absence. See generally, Exhibit A. Additionally, unlike the plaintiffs in those cases, Plaintiff was not suspended and could have returned to work (and admittedly Comcast Cable offered him an accommodation to return to work). Exhibit A at ¶ 49. Thus, Plaintiff did not sufficiently allege that anyone subjected him to an "abusive working environment" during his leave.

Therefore, Plaintiff has failed to plead a hostile work environment claim because he was not, on the face of the Complaint, subjected to a hostile work environment within the 300 days before he allegedly initiated contact with the PHRC and EEOC on March 31, 2025. As such, Plaintiff's Complaint should be dismissed.

---

[5]     The court, in Doe, did not grant defendant's motion to dismiss on other grounds. Doe, 2020 WL 6482545, at *11.

### ii. Plaintiff Has Not Plead Facts To Support a Continuing Violation Between The Alleged Events That Preceded His Medical Leave and his Termination from Employment.

To make an otherwise untimely hostile work environment claim timely, a plaintiff may allege "a series of separate acts that, when viewed in the collective, constitute one unlawful employment practice." Riley v. St. Mary Med. Ctr., No. 13-cv-7205, 2014 WL 1632160, at *3 (E.D. Pa. Apr. 23, 2014) (citing Mandel, 706 F.3d at *3). This is commonly referred to as a "continuing violation theory," which allows a plaintiff to aggregate discriminatory acts that are not themselves actionable, but the plaintiff must show (1) that all aggregated acts are part of the same unlawful employment practice, and (2) that at least one act falls within the applicable limitations period. See Riley, 2014 WL 1632160, at *3 (citing O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006)). Here, Plaintiff alleges two discrete acts within the statute of limitations period: 1) Comcast's offer of an accommodation that was rejected by Plaintiff; and 2) the termination of Plaintiff's employment. Exhibit A at ¶¶ 49, 52. These allegations, however, cannot establish a continuing violation theory connected with the alleged conduct by Mr. Antonioli that preceded Plaintiff's medical leave.

The continuing violations theory cannot be based upon adverse employment decision[s] that are "discrete acts." The Supreme Court has explained that "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." Nat. R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112 (2002). "Unlike discrete acts of discrimination, a hostile work environment claim is a series of separate acts that, when viewed together, amount to an unlawful employment practice." Kahriger v. Becerra, No. CV 23-4384, 2024 WL 2136011, at *4 (E.D. Pa. May 13, 2024) (citing Mandel, 706 F.3d at 165). "Thus, the entire claim is actionable as long as one act contributing to the hostile work environment falls within the [300-

day] window."  Kahriger, 2024 WL 2136011, at *4 (citing Morgan, 536 U.S. at 122).  On the

other hand, discrete acts are those "easy to identify," including "***termination***, failure to promote,

***denial of transfer***, refusal to hire, wrongful suspension, wrongful discipline, denial of training,

[or] wrongful accusation."  O'Connor, 440 F.3d at 127 (citing Morgan, 536 U.S. at 122)

(emphasis added).  The Supreme Court distinguished hostile environment claims from discrete

acts in that the former's "very nature involves repeated conduct."  Morgan, 536 U.S. at 115.  The

purpose of the distinction between discrete and non-discrete acts is to guide courts in their statute

of limitations analysis.  Stucke v. City of Phila., 685 F. App'x 150, 153 (3d Cir. 2017).

The Third Circuit has likewise interpreted Morgan to find that discrete acts "cannot be

aggregated under a continuing violations theory."  O'Connor, 440 F.3d at 127.  Furthermore,

discrete acts actionable on their own, such as termination or denial of a transfer, "cannot

simultaneously support a hostile environment claim."  See Doe v. Mercy Cath. Med. Ctr., 850

F.3d 545, 566 (3d Cir. 2017) (citing Mandel, 706 F.3d at 165).

Specifically, the Third Circuit has held that termination from employment is a "discrete

act" that cannot contribute to a hostile work environment claim.  Mercer, at 62, 64 (3d Cir. 2015)

(the court found the plaintiff "points to no specific incidents that took place after September 27 [,

2010] that could have contributed to his hostile work environment claim" when he was

terminated on January 14, 2011).  Judges in this District have repeatedly held that termination is

a discrete act and cannot establish a hostile work environment claim.  Brewer v. Key Bank, N.A.,

Civil Action No. 23-747, 2024 WL 4026529, at *11 (E.D Pa. Sep. 3, 2024) ("the Third Circuit

has stated that discrete, individually-actionable acts, such as wrongful termination, cannot be

aggregated with other acts to create a continuing violation.") (citing Chieke v. Dep't of Corr.,

811 F. App'x 770, 771 (3d Cir. 2020)); Endo Pharm. Inc. v. Fryer, Civil Action No.  17-2245,

2020 WL 4748296, at *5 (E.D. Pa. Aug. 17, 2020) ("Termination of employment is considered a 'discrete act' and cannot be aggregated with other actions to form a hostile work environment claim.") (citing O'Connor, 440 F.3d at 127); Roberts v. Health Partners Plans, Inc., Civil Action No. 17-0297, 2017 WL 3310691, at *5 (E.D. Pa. Aug. 3, 2017) ("Termination is a discrete act, and is not a component of a hostile work environment claim.") (citing Santee v. Lehigh Valley Health Network, Inc., Civil Action No. 13-3774, 2013 WL 6697865, at *6-7 (E.D. Pa. Aug. 3, 2017)).

Moreover, courts in this district have found that discrete acts, such as termination, cannot be combined with allegations that pre-date the statutory period under the continuing violation theory. In fact, in McLean v. Abington Mem. Hosp., this Court held that, "[t]he continuing violation doctrine is not applied to *failure to accommodate claims*, *nor can termination be used as a connection to bring otherwise time-barred events within the 300-day period*." Civil Action No. 15-671, 2015 WL 5439061, at *7 (E.D. Pa. Sep. 15, 2025) (emphasis added).[6]

Many other decisions in this District have held that "where none of the acts that occurred within the limitations period are suggestive of discrimination, they cannot be used as a hook to make older, otherwise untimely discriminatory acts actionable." Brewer, 2024 WL 4026529, at *11 ("Accordingly, [Plaintiff] may not rely on her March 9, 2022 termination to bring her hostile work environment claim within the statute of limitations," with the court noting termination is a discrete act) (citing Chieke, 811 F. App'x at 771) ; Kahriger, 2024 WL 2136011, at *5 (E.D. Pa. May 13, 2024) (dismissing Plaintiff's claim for hostile work environment as "only the effective dates of [Plaintiff]'s demotion and transfer fall within the [applicable] window . . . ."); Riley,

---

[6]     Notably, the only two acts Plaintiff pleads within the statutory period are an allegation that Comcast did not accommodate him by transferring him and an allegation that Comcast terminated his employment. See Exhibit A at ¶¶ 49, 52.

2014 WL 1632160, at *4 ("Because Plaintiff alleges no other acts that fall within the limitations period [asides from termination], Plaintiff's hostile work environment claims . . . must be dismissed as untimely.").[7]

Here, neither of the acts that Plaintiff alleges occurred within the statute of limitations period can support a hostile work environment claim.[8] First, Defendants' June 10th offer to provide Plaintiff an intermediary supervisor was a discrete act that was the antithesis of hostile and in no way substantiates a hostile work environment claim. Second, Plaintiff's termination is a discrete act which he cannot use as a "hook" to make older and otherwise untimely acts actionable. Even if Plaintiff alleges that the offer to provide an intermediary supervisor or the termination of Plaintiff's employment were discriminatory, which they were not, they do not constitute harassment, as a matter of law, and, therefore, are discrete acts that cannot be connected to otherwise time-barred allegations within the 300-day window.

Even further, the 14-month break in time between Plaintiff's allegations of harassment and Plaintiff's allegations related to his termination and accommodation process "destroys the

---

[7]     During the parties meet and confer efforts, Plaintiff relied upon two cases to support his argument that termination and failure to accommodate are *not* discrete acts under the continuing violation theory: Jones v. Sun Pharm. Indus., Inc., No. 3:19cv566, 2020 WL 2501439 (E.D. Va. May 14, 2020) and Matthews v. United Airlines, Inc., No. 2:25-cv-12895, 2026 WL 1283854 (D.N.J. May 11, 2026). Both cases run counter to numerous decisions from the Third Circuit and the Eastern District of Pennsylvania, including Your Honor's opinion in *McLean*, that have found termination and failure to accommodate claims **cannot** be used as anchors to bring otherwise untimely acts within the statutory period. Further, both cases are factually distinguishable in that the plaintiffs alleged they were involuntarily terminated whereas, here, Plaintiff was, admittedly, given the option to remain employed with an intermediary supervisor, which Plaintiff rejected. Additionally, *Jones* relies on Fourth Circuit, not Third Circuit, case law, and, notably, the court dismissed plaintiff's hostile work environment claim as legally insufficient. Further, in *Matthews,* the plaintiff alleged numerous severe facially hostile acts, unlike Plaintiff. *See Jones*, 2020 WL 2501439 at *5-6; *Matthews*, 2026 WL 1283854 at *1-4.

[8]     See Lara v. Sam Adams Pa. Brewing Co., LLC, ("[C]laims based upon discrete acts of discrimination and retaliation, . . . cannot, without more, provide the basis for a claim of hostile work environment").

pattern of harassment and does not establish a continuing violation because the prior act or acts are temporally too attenuated to enable Plaintiff to keep those claims alive." Coombs v. Target Corp., Civil Action No. 12-4651, 2013 WL 664186, at *4 (E.D. Pa. Feb. 25, 2013) (finding a nearly two-year break between allegations of discrimination to be too attenuated to support a continuing violation theory). See also Metzger v. Coopersburg & Liberty Kenworth, Inc., 5:24-cv-06426-JMG, 2025 WL 1809999, at *4 (E.D. Pa. July 1, 2025) (holding that a "significant gap of time between the discriminatory or harassing incidents may prohibit the time-barred claim from being attached under a continuing violations theory."). Here, the 14-month gap between plaintiff's allegations of harassment and the termination of his employment and conclusion of the accommodations process is destroys any alleged pattern of harassment and cannot establish a continuing violation theory as a matter of law. Id. See also Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 716 (3d Cir. 1997) (holding that a seven-month gap was too significant for there to be any lingering effects of prior incidents of harassment).

Thus, because both acts that Plaintiff alleges within the 300-day statute of limitations are non-harassing, discrete, and too attenuated from any allegations of harassment, Plaintiff's filings with the EEOC were untimely, and his claims should be dismissed as time-barred.

### C. Even if Plaintiff's Filings with the EEOC and PHRC were Timely, Plaintiff Has Not Plausibly Plead a Hostile Work Environment and Harassment Claim

Even if Plaintiff's claims were timely, which they are not, Plaintiff nonetheless fails to state a claim for a hostile work environment under both Pennsylvania and Federal law. "To prevail on a hostile work environment theory of sex discrimination, a plaintiff must prove (1) [he] suffered intentional discrimination because of [his] sex; (2) the discrimination was severe or pervasive; (3) [he] was detrimentally affected by the discrimination; (4) the detrimental

effect was objectively reasonable; and (5) the existence of *respondeat superior* liability."[9]  Barry v. Thomas Jefferson Univ. Hosp., Inc., Civil Action No.  25-1428, 2026 WL 935837, at *7 (E.D. Pa. Apr. 7, 2026) (emphasis in original) (citing Mandel, 706 F.3d at167).  "Title VII is not intended as a 'general civility code,' and requires that 'conduct must be extreme' to constitute the kind of 'change in the terms and conditions of employment' the statute was intended to target."  Burgess v. Dollar Tree Stores, Inc., 642 F. App'x 152, 155 (3d Cir. 2016) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

"For a hostile work environment claim . . . a plaintiff's allegations must plausibly show that [his] place of employment was 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [the] employment and create an abusive working environment."  Stallworth v. Milan Laser Corp. LLC, No. 25-cv-0393, 2025 WL 2637234, at *3 (E.D. Pa. Sep. 12, 2025) (quoting Culler v. Sec'y of U.S. Veterans Affs., 507 F. App'x 246, 249 (3d Cir. 2012)).  As this Court noted, "A single isolated incident, unless extremely serious, is not sufficient to sustain a hostile work environment claim." Brzozowski v. Penn. Turnpike Comm., Civil Action No.  5:15-2339, 2019 WL 1303955, at *11 (E.D. Pa. Mar. 20, 2019) (citing Caver v. City of Trenton, 420 F.3d 243, 262 (3d. Cir. 2005)). "Occasional insults, teasing, or episodic instances of ridicule are not enough; they do not 'permeate' the workplace and change the very nature of the plaintiff's employment."  Wesley v. PNC Bank, Civil Action No.  19-5052-KSM, 2020 WL 7319548, at *6 (E.D. Pa. Dec. 11, 2020) (quoting Brooks v. CBS Radio, 342 F. App'x 711, 777 (3d Cir. 2009)).

---

[9]     See Powell-Folks v. Villanova Univ., No. CV 24-5065, 2025 WL 756538, at *2 (holding that "[h]ostile work environment claims under Title VII . . . and the PHRA are evaluated under the same analytical framework.") (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)).

Courts in the Third Circuit have routinely dismissed complaints based upon one or two discriminatory remarks because they are rarely considered severe and never considered pervasive.  See Stallworth, 2025 WL 2637234, at *3-4 (finding the plaintiff failed to state a claim where a manager made inappropriate sexual comments about the plaintiff's personal life to the plaintiff, and plaintiff's sexuality was questioned at a meeting, labeling these instances as "one-off incidents [that] do not amount to pervasive hostility."); Chandler v. La-Z-Boy, Inc., 621 F.Supp.3d 568, 573-74 (E.D. Pa. 2022) (finding that the plaintiff being called a "colored girl" by her manager, while offensive, was not so severe as to create a hostile work environment, and since all other alleged "taunts" by co-workers were facially neutral with no facts to support bias, the plaintiff's claim was dismissed);  Wesley v. PNC Bank, Civil Action No. 19-5052-KSM, 2020 WL 7319548, at *4, *7 (E.D. Pa. Dec. 11, 2020)  (dismissing the plaintiff's hostile work environment claim where the plaintiff alleged the defendant stated she would be "better off" working at the inner city branch because she was African-American, amongst other similar racist comments made to other employees about the plaintiff).

On the other hand, courts in the Third Circuit are much more likely to find the plaintiff has stated a hostile work environment claim when the discriminatory harassment is constant or a one-off discriminatory incident is severe.  Castleberry v. STI Grp., 863 F.3d 259, 266 (3d Cir. 2017) (finding, on appeal of motion to dismiss, that the use of a racially charged slur in front of an African-American worker and their non-African-American co-workers, combined with threats of termination, constituted "severe conduct that could create a hostile work environment."); Stallworth, 2025 WL 2637234, at *4 (comparing the facts of their case to Castleberry to distinguish between one-off unwelcomed comments and severe discrimination); Ovalle v. Harris Blacktopping, Inc., Civil Action No.  21-3591, 2021 WL 6063576, at *12 (E.D. Pa. Dec. 22,

16

2021) (Judge Kearney) (holding, "[t]he Workers' allegations of daily or weekly epithets such as 'border hoppers' referring to Workers' Mexican national origin over a period of years is sufficient at [the motion to dismiss stage] to constitute pervasive conduct.").

Here, Plaintiff fails to state a claim because any alleged discriminatory comments made by Mr. Antonioli were neither severe nor pervasive. Plaintiff alleges Mr. Antonioli told Plaintiff at a lunch he would be "perplexed and disturbed" if one of his, Defendant's, children were gay, and that he would aim to persuade his child to reconsider. See Exhibit A at ¶ 25. Plaintiff further alleges that, in the same conversation, Mr. Antonioli stated that sexual orientation other than heterosexuality is "abnormal," and that Mr. Antonioli acknowledged he had been through implicit bias training after having issues in the past. Id. at ¶¶ 25-26. Even taking these allegations as true, these one-off statements do not rise to the level of severity seen in Castleberry, where the court noted the seriousness of the defendant accosting the plaintiff with racial slurs *in conjunction* with threatening the plaintiff's employment. At no point in this conversation was Plaintiff's job threatened, nor does Plaintiff allege that Mr. Antonioli ever used slurs directed at him. See, generally, Exhibit A.

Additionally, unlike Ovalle, where the conduct of the defendant was both pervasive and severe, there were no facially derogatory comments made by Mr. Antonioli on a regular basis. Rather the alleged discriminatory comments here occurred during a single conversation, thus making it a singular alleged discrete act. If anything, this alleged conversation is similar to the facts of Stallworth, although, in that case, the plaintiff failed to state a claim when they alleged at least *two* instances of facially discriminatory behavior, whereas here Plaintiff is only able to point to one instance of facially discriminatory behavior. Plaintiff's allegations do not rise to the level of severity required to sustain a hostile work environment claim. See Friel v. Mnuchin, 474

17

F.Supp.3d 673, 691 (E.D. Pa. 2020) (citing Caver, 420 F.3d at 262-63 (holding, "an isolated or single incident of harassment, unless extremely serious, does not establish a hostile work environment.")

Much like in Chandler, the other allegations, as Plaintiff himself acknowledges in his Complaint, are facially neutral.[10] While Plaintiff blanketly states that the facially neutral comments and actions by Mr. Antonioli were motivated by bias, Plaintiff fails to show that these allegations had any sort of connection to his sexual orientation. See Exhibit A at ¶¶ 17-24, 30-32, 37, 42. Additionally, Plaintiff claims that Mr. Antonioli's alleged comments asking Plaintiff to dress "less elegantly" and to be more "normal" "had the intent or effect of creating a hostile work environment" without alleging any facts to support such a claim. Id. at ¶¶ 33-36. Plaintiff also alleges that Mr. Antonioli prevented his employment growth but again fails to allege that there was any connection between these actions and his sexual orientation (or how such conduct would constitute harassment rather than discrimination). Id. at ¶¶ 16, 31, 32, 37. Additionally, Plaintiff alleges Mr. Antonioli framed the separation of an LGBTQ high-ranking employee as "having 'bailed out' . . . or other negative connotation." Id. at ¶ 29. While it is unclear what Plaintiff means here, these comments were not directed at Plaintiff nor were they even about Plaintiff. Overall, Plaintiff's allegations mainly revolve around the idea that Mr. Antonioli was allegedly rude to him, which is insufficient for a hostile work environment claim as Title VII is not intended to be a "general civility code." See Burgess, 642 F. App'x at 155.

---

[10]    "The foregoing interactions were exemplary of the discourse between Plaintiff and Defendant Antonioli and support that the *facially neutral harassments* and microaggressions from Defendant Antonioli toward Plaintiff were motivated by bias and discrimination." Exhibit A at ¶ 27.

Plaintiff makes numerous allegations that Comcast failed to resolve the issue or accommodate him, but Plaintiff fails to allege how these contributed to a hostile work environment.[11] Id. at ¶¶ 40-44. 46-51. Plaintiff also admits that Comcast investigated his complaints and found his allegations to be unsubstantiated. Id. at ¶ 48.

Therefore, Plaintiff fails to state a hostile work environment because his conclusory and speculative allegations fail to show he was subject to severe or pervasive harassment based on his sexual orientation. As such, Plaintiff's Complaint should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court grant the Motion of Defendants to dismiss Plaintiff's Complaint with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

**FISHER & PHILLIPS LLP**

Date: July 21, 2026

*/s/ Michael R. Galey*
Michael R. Galey, Esquire
Caleb B. Kearney, Esquire
Two Logan Square
100 N. 18th Street, 12th Floor
Philadelphia, PA 19103
Phone: (610) 230-2150
mgaley@fisherphillips.com
ckearney@fisherphillips.com

*Counsel for Defendants Comcast Cable Communications Management, Comcast Cable Communications LLC, Comcast Corporation, Comcast Holdings Corporation, and A.J. Antonioli.*

---

[11] As noted, Plaintiff is separately pursing a failure to accommodate claim, among others, in arbitration.