**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PATRICK DIOGENIA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 26-3156** |
| | : | |
| **COMCAST CABLE COMMUNICATIONS MANAGEMENT LLC, COMCAST CABLE COMMUNICATIONS, LLC, COMCAST CORPORATION, COMCAST HOLDINGS CORPORATION, ANDREW ANTONIOLI** | : | |

# MEMORANDUM

**KEARNEY, J.** **August 6, 2026**

Congress requires employees suing their employers in federal court for alleged discrimination based on a hostile work environment to first timely exhaust their remedies through a federal administrative agency. Employees disappointed with the agency's decision can then timely file a case before us. We must dismiss lawsuits where the employee did not exhaust a timely filed administrative claim. But we can equitably toll these administrative deadlines in limited circumstances.

We today study whether we can toll a former employee's plainly untimely claims with the federal and state agencies for his supervisor's alleged hostile work environment based on his sexual orientation. The employee's December 29, 2024 administrative filing is untimely unless he can show conduct contributing to a hostile work environment conduct within the time limitations. The employee asks us to toll these deadlines arguing the employer's July 3, 2024 termination (within the limitations period) is evidence of a continuing hostile work environment created by a supervisor in March 2023 (fourteen months earlier). But the discrete act of termination on July 3, 2024 is not part of a continuous pattern of hostile work environment when the employee took leave

in March 2023 and did not return to work. We cannot toll these deadlines for the hostile work environment claim. We dismiss the employee's claims for discrimination based on a hostile work environment under both federal and state law.

But the employee also generally refers in one paragraph to his former supervisor assisting in "discrimination." He does not plead facts allowing us to infer a plausible basis for this separate discrimination. But he did mention sex discrimination to the administrative agency without describing facts allowing us to plausibly infer discrimination based on sexual orientation arising from the July 3, 2024 termination. The July 3,2024 termination is a discrete act and may have been timely filed with the administrative agencies on December 29, 2024. We grant the employee leave to amend to plead facts allowing us to infer a timely and plausible discrimination by termination claim on July 3, 2024 based on his sexual orientation without opining on the merits or timeliness of this claim against persons other than his former supervisor.

## I. Facts alleged or integral to the alleged facts[1]

Patrick Diogenia told his future employer Comcast Cable Communications, LLC of being a gay man when he interviewed for a position as Senior Manager in 2022.[2] Mr. Diogenia then reported to Senior Director Andrew Antonioli.[3] His employer provided positive performance reviews during his employment.[4]

***Senior Director Antonioli harasses Mr. Diogenia between September 2022 and May 2023.***

Senior Director Antonioli harassed Mr. Diogenia beginning during Mr. Diogenia's September 2022 onboarding.[5] Senior Director Antonioli refused to answer Mr. Diogenia's questions, limited him to one question per meeting, required a weekly task agenda not required of others, and interrupted and ignored Mr. Diogenia in front of his colleagues.[6] Senior Director Antonioli told Mr. Diogenia during a February 2023 lunch he would be "perplexed and disturbed"

by having a gay child and called sexual orientations other than heterosexual "abnormal."[7] Senior Director Antonioli suggested Mr. Diogenia quit and stated Mr. Diogenia "chose the wrong job" during his end-of-year evaluation for 2022.[8]

***Mr. Diogenia begins medical leave on May 10, 2023 and never returns to work.***

Mr. Diogenia sought medical assistance in early May 2023 for panic attacks, sleep disturbances, anxiety, and depression caused by Senior Director Antonioli's harassment.[9] He asked for assistance from Comcast's Human Resources department.[10] Mr. Diogenia began a medical leave of absence on May 10, 2023.[11] He identifies no harassment by Senior Director Antonioli after beginning his leave.

Mr. Diogenia remained on medical leave for several more months. His therapist recommended he return to work only if Senior Director Antonioli no longer supervised him and he did not need to interact with Senior Director Antonioli to perform his duties.[12] Comcast, through its "third-party leave and accommodation administrator," proposed a "job search" through which Mr. Diogenia could remain employed while seeking another position within Comcast.[13] He asked to be removed from Senior Director Antonioli's supervision on September 21, 2023 to accommodate his disabilities arising from anxiety and depression.[14] Comcast denied Mr. Diogenia's transfer request in October 2023.[15] He submitted a written complaint about Senior Director Antonioli in November 2023 while on medical leave.[16] Comcast investigated but found Mr. Diogenia's complaints unsubstantiated.[17]

Comcast proposed Mr. Diogenia return to work in his same role under an intermediary supervisor between him and Senior Director Antonioli on June 10, 2024.[18] But this proposal required Mr. Diogenia to remain within Senior Director Antonioli's chain of command.[19] Mr. Diogenia does not plead whether he responded to the June 10, 2024 proposal.[20] Comcast's Human

Resources employee told Mr. Diogenia on June 24, 2024 his refusal to return within Senior Director Antonioli's chain of command would result in his administrative separation.[21] Mr. Diogenia does not plead whether he responded. Comcast terminated Mr. Diogenia's employment on July 3, 2024—approximately three weeks after its June 10, 2024 proposal.[22]

***Mr. Diogenia files administrative complaints.***

Mr. Diogenia waited several months after his July 3, 2024 termination to complain administratively about Senior Director Antonioli's conduct towards him before May 10, 2023. He submitted a pro se complaint on December 29, 2024 to the New Jersey Division on Civil Rights.[23] Mr. Diogenia does not plead the contents of his New Jersey complaint and no party provides it for our review. The New Jersey Division told him on March 14, 2025 it could not hear his case as it lacked authority to resolve claims arising from conduct involving his Pennsylvania employer.[24] Mr. Diogenia filed an intake form with the Pennsylvania Human Relations on March 31, 2025.[25]

Mr. Diogenia then dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission on July 25, 2025.[26] He identified disability and retaliation as the protected classes in the Charge and claimed Comcast denied him a disability accommodation.[27] He did not identify sex as a protected class but stated Senior Director Antonioli harassed him because of his sexual orientation.[28]

Mr. Diogenia wrote the Equal Employment Opportunity Commission on November 3, 2025 asking it to record March 31, 2025 as his charge-filing date based on the date the Pennsylvania Human Relations Commission allegedly received his intake form.[29] He separately identified sex based on sexual orientation as a basis and harassment or hostile work environment as an issue in a supporting "Charge Narrative (Summary)" attached to his letter.[30] He does not

plead, and we otherwise cannot discern from the public record, when the administrative agencies decided his claim and presumably granted him a right to sue in federal court.

***Mr. Diogenia sues.***

Mr. Diogenia waited until May 10, 2026 to sue his former employer Comcast and its Senior Director Antonioli claiming they created a hostile work environment based on his sexual orientation under Title VII and the Pennsylvania Human Relations Act.[31] He does not seek relief in this case based on the disability accommodation issues or retaliation for seeking an accommodation identified in his dual filing with the administrative agencies. He also alleges Senior Director Antonioli is liable to him under Pennsylvania law (not federal) for assisting in "harassment and discriminatory treatment" without detailing discriminatory treatment distinct from the pleaded harassment.[32] Mr. Diogenia pleads no facts in the administrative materials before us allowing us to infer discrimination based on his sexual orientation distinct from the alleged hostile work environment.

## II. Analysis

Comcast and Senior Director Antonioli move to dismiss Mr. Diogenia's Title VII and Pennsylvania Human Relations Act hostile work environment claims. They argue Mr. Diogenia untimely submitted his claims to the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission.[33] We agree. We grant Comcast's and Senior Director Antonioli's Motion and dismiss Mr. Diogenia's hostile work environment claims as time barred. But Comcast and Senior Director Antonioli do not move to dismiss the Pennsylvania discrimination reference to Senior Director Antonioli. We dismiss this claim without prejudice. Mr. Diogenia may amend to plead facts consistent with Rule 11 allowing us to infer a plausible

basis for a timely discrimination claim based on Comcast's decision to terminate his employment on July 3, 2024 based on his sexual orientation.

**A. We dismiss Mr. Diogenia's hostile work environment claims as time barred.**

Mr. Diogenia alleges Senior Director Antonioli created a hostile work environment based on Mr. Diogenia's sexual orientation between his September 2022 onboarding and his medical leave of absence beginning on May 10, 2023.[34] He alleges Comcast terminated him on July 3, 2024.[35] He alleges he exhausted his administrative remedies through a Charge of Discrimination dual filed with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission.[36]

**1. We dismiss Mr. Diogenia's Title VII claim as time barred.**

Comcast and Senior Director Antonioli argue we must dismiss Mr. Diogenia's Title VII claim based entirely on hostile work environment claim because he does not sufficiently plead facts allowing us to plausibly infer he filed his charge within 300 days of the alleged hostile work environment conduct.[37] They argue Mr. Diogenia cannot base his claim on his period of inactive employment between his medical leave of absence beginning on May 10, 2023 and his July 3, 2024 termination. Comcast and Senior Director Antonioli assert Mr. Diogenia alleges only two acts within the 300-day limitations period: (1) Comcast proposed Mr. Diogenia return to work under an intermediary supervisor on June 10, 2024, and (2) Comcast terminated Mr. Diogenia on July 3, 2024.[38] They argue Comcast's proposal and Mr. Diogenia's termination are "discrete acts" and Mr. Diogenia cannot use the "continuing violation theory" to save his untimely hostile work environment claim.[39] They assert the fourteen-month gap between Mr. Diogenia's allegations "destroys any alleged pattern of harassment."[40] Mr. Diogenia counters his July 3, 2024 termination is a "continuing violation" and part of the same pattern of Comcast's alleged discrimination

involving its hostile work environment allowing us to toll the deadlines.[41] Mr. Diogenia argues his leave of absence and his termination several months later "directly relate to the hostile work environment."[42] He relies on Judge Marston's analysis four years ago in *Mudie v. Philadelphia College of Osteopathic Medicine* to argue his termination may serve as the final act of a continuing hostile work environment.[43]

Congress requires Mr. Diogenia to exhaust administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission within 300 days of the unlawful employment practice before filing a federal lawsuit.[44] He must thereafter file a private action in federal court within ninety days of learning the Commission will not proceed on his behalf.[45] Comcast and Senior Director Antonioli may move to dismiss arguing Mr. Diogenia's failure to file a timely charge where the bar is apparent on the face of the complaint.[46]

Mr. Diogenia does not plead facts allowing us to plausibly infer an act contributing to a hostile work environment within 300 days of his Charge. He asked the Equal Employment Opportunity Commission to treat March 31, 2025—the date the Pennsylvania Human Relations Commission allegedly received his intake form—as his charge-filing date (although we have no fact basis today to understand the significance of March 31, 2025).[47] The 300-day window then reaches back to June 4, 2024 if we accept the March 31, 2025 filing date.

Mr. Diogenia pleads only three acts within this June 4, 2024 window: (1) Comcast proposed he return to work under an intermediary supervisor on June 10, 2024; (2) Comcast's Human Resources employee told him on June 24, 2024 his refusal to return within Senior Director Antonioli's chain of command would result in his administrative separation; and (3) Comcast terminated his employment on July 3, 2024. Our Court of Appeals instructs Mr. Diogenia may aggregate "discriminatory acts that are not individually actionable" to form a hostile work

environment claim under the continuing violation doctrine.[48] These "acts can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period."[49] Mr. Diogenia must show all acts constituting his claim are part of the same unlawful employment practice and at least one act falls within the applicable limitations period.[50]

None of the three events anchors a continuing violation theory. "A discrete act in itself constitutes a separate actionable unlawful employment practice."[51] The Supreme Court describes discrete acts as those "easy to identify," including termination and denial of transfer.[52] "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[53] Our Court of Appeals instructs discrete acts "cannot be aggregated under a continuing violations theory."[54]

Mr. Diogenia's curious reliance on Judge Marston's thoughtful analysis four years ago does not alter our analysis. Judge Marston cited other colleagues allowing a timely discrete act to contribute to a hostile work environment when the timely and untimely conduct involved "similar conduct by the same individuals" in *Mudie.*[55] The employee in *Mudie* attributed earlier discriminatory comments and treatment to one supervisor.[56] The supervisor left the employer approximately eleven months before different individuals investigated and terminated the employee.[57] But the employee in *Mudie* relied on her timely termination to make earlier harassment actionable.[58] Judge Marston declined to apply the continuing violation doctrine because the earlier discriminatory comments differed markedly from the later investigation and termination and involved different individuals.[59]

The same distinction applies here. We find the June 10, June 24, and July 3, 2024 conduct are discrete acts. Comcast did not approve Mr. Diogenia's transfer request to move away from Senior Director Antonioli.[60] It instead proposed he return to his existing role under an intermediary

supervisor.[61] Comcast's Human Resources employee then warned him of administrative separation if he refused the proposal.[62] Comcast later terminated Mr. Diogenia on July 3, 2024.[63] These discrete acts do not save Mr. Diogenia's continuing-violation theory. They arose after a fourteenth-month break from the workplace, differ in nature from Senior Director Antonioli's earlier comments and treatment, and involved different actors. Mr. Diogenia pleads no facts allowing us to infer Senior Director Antonioli participated in the June or July 2024 conduct. The later acts do not involve similar conduct by the same individual and do not form one continuing unlawful employment practice with the alleged pre-leave harassment.

Nor does Mr. Diogenia plead a non-discrete act connecting Senior Director Antonioli's alleged harassment to the limitations period as part of one "unlawful employment practice."[64] He alleges Senior Director Antonioli harassed him before he began his May 10, 2023 leave of absence. He identifies no harassment after beginning his leave and never returned to work. Senior Director Antonioli's last alleged harassing conduct preceded Comcast's June 10, 2024 proposal by approximately thirteen months.[65] Mr. Diogenia pleads no act linking the pre-leave harassment to conduct within the limitations period "in a pattern of actions which continues into the applicable limitations period."[66]

We dismiss Mr. Diogenia's Title VII hostile work environment claim as time barred.

**2. We dismiss Mr. Diogenia's Pennsylvania hostile work environment claim as time barred.**

Mr. Diogenia alleges Comcast and Senior Director Antonioli are also liable to him under the Pennsylvania Human Relations Act for a hostile work environment based on his sexual orientation.[67] Comcast and Senior Director Antonioli argue we must dismiss Mr. Diogenia's Pennsylvania claim because he untimely filed his administrative complaint with the Pennsylvania Human Relations Commission.[68] Comcast and Senior Director Antonioli argue Mr. Diogenia does

not sufficiently plead facts supporting his Pennsylvania claim within 180 days of his requested March 31, 2025 filing date.[69] They argue Mr. Diogenia pleads no conduct occurring on or after October 2, 2024—180 days before his requested March 31, 2025 filing date.[70]

Mr. Diogenia offers two responses. He first argues he timely asserted his rights by filing a Charge with the New Jersey Division on Civil Rights on December 29, 2024.[71] He contends he "misfiled" with the New Jersey Division and acted with "reasonable diligence" to file his action with the Pennsylvania Human Relations Commission after learning the New Jersey Division could not hear his case.[72] He asks us to equitably toll the limitations period based on his filing in the wrong forum.[73] But he also missed the deadline in New Jersey. He then again argues the earlier harassment constituted a continuing violation.[74] We disagree. We dismiss Mr. Diogenia's Pennsylvania Human Relations Act hostile work environment claim as time barred.

**a. Equitable tolling based on the mistaken New Jersey filing does not apply because Mr. Diogenia also filed untimely in New Jersey.**

The Pennsylvania General Assembly through section 959(h) requires Mr. Diogenia to file an administrative complaint within 180 days of the alleged unlawful discriminatory practice before bringing a claim under the Pennsylvania Human Relations Act.[75] The General Assembly provides "the computation of the 180 days does not include a period of time which is excludable as a result of waiver, estoppel[,] or equitable tolling."[76]

Our Court of Appeals instructs we may equitably toll the limitations period if Mr. Diogenia diligently pursued his rights and "some extraordinary circumstance stood in [his] way."[77] Equitable tolling is a remedy "available only sparingly and in extraordinary situations."[78] The Pennsylvania Supreme Court evaluates "a broad array of situations" in considering equitable tolling including the discovery rule: fraud, concealment, a defendant's active efforts to mislead a

plaintiff about his cause of action, extraordinary circumstances preventing a plaintiff from asserting his rights, and a plaintiff's timely assertion of his rights in the wrong forum.[79]

Equitable tolling based on filing in the wrong forum applies when a claimant timely asserts his rights in the wrong forum.[80] But Mr. Diogenia already missed the deadline for his hostile work environment claim when he filed with the New Jersey Division on December 29, 2024. He filed his New Jersey complaint 599 days after beginning medical leave and identifies no harassment after his leave began. He filed an untimely claim in the wrong forum and the New Jersey filing provides no basis to toll the General Assembly's limitations period.

**b. The July 3, 2024 termination is not part of continuing hostile work environment allowing Mr. Diogenia to sue for conduct before May 10, 2023.**

Mr. Diogenia next argues the July 3, 2024 termination is part of the continuing nature of the hostile work environment created by Senior Director Antonioli before May 10, 2023. "If the alleged unlawful discriminatory practice is of a continuing nature," Pennsylvania treats the practice as occurring through the date on which it ceased.[81] An otherwise untimely hostile work environment claim may therefore proceed if an act contributing to the same unlawful employment practice occurred within the limitations period.[82] But, as we explained in addressing Mr. Diogenia's federal claim, a later discrete act does not make earlier harassment timely when the acts do not involve similar conduct by the same individuals.[83]

Mr. Diogenia does not plead sufficient facts allowing us to plausibly infer he timely filed his claim with the Pennsylvania Human Relations Commission. We measure the 180-day window from his alleged March 31, 2025 intake form.[84] The window reaches back to October 2, 2024. Mr. Diogenia pleads no act by Comcast or Senior Director Antonioli on or after October 2, 2024.[85] He alleges Senior Director Antonioli harassed him before he began medical leave on May 10, 2023.[86]

He alleges Comcast proposed he return to work under an intermediary supervisor on June 10, 2024, warned him on June 24, 2024 of administrative separation if he refused the proposal, and terminated him on July 3, 2024.[87] None of these events occurred within the 180-day limitations period measured from March 31, 2025.

Mr. Diogenia's December 29, 2024 filing with the New Jersey Division on Civil Rights does not save his claim. Even assuming equitable tolling permits us to treat December 29, 2024 as the operative filing date, the 180-day limitations period would reach back only to July 2, 2024. Mr. Diogenia pleads no act of harassment or other non-discrete conduct contributing to the alleged hostile work environment on or after July 2, 2024. Comcast terminated him one day later on July 3, 2024 but termination is a discrete act. As we explained in addressing his federal hostile work environment claim, the termination differed in nature from Senior Director Antonioli's earlier comments and treatment, and Mr. Diogenia pleads no facts allowing us to infer Senior Director Antonioli participated in the July 3, 2024 termination decision. The July 3 termination cannot form one continuing unlawful employment practice with the earlier harassment. The July 3 termination therefore cannot render the earlier hostile-work-environment conduct timely filed.

We dismiss Mr. Diogenia's Pennsylvania Human Relations Act hostile work environment claim as time barred.

**B. We grant Mr. Diogenia leave to amend his singular discrimination reference if he can plead facts allowing us to plausibly infer a timely claim for discrimination in the July 3, 2024 termination based on his sexual orientation.**

Mr. Diogenia also refers without specific facts to Senior Director Antonioli's potential liability under the Pennsylvania Human Relations Act for assisting in "harassment and discriminatory treatment" without detailing the discrimination beyond the alleged pleaded harassment.[88] We found Mr. Diogenia's hostile work environment claim is time barred. And the

discrete alleged acts of not transferring him in June 2024 followed by the July 3, 2024 termination cannot form the pattern of continual hostile work environment allowing him to pursue his hostile work environment claim.

But Comcast and Senior Director Antonioli do not address whether Mr. Diogenia could pursue a sexual orientation discrimination based on termination claim. This claim arises with the July 3, 2024 termination. We do not have pleaded facts today to more fully evaluate the timeliness or pleading sufficiency of this claim. Mr. Diogenia does not plead facts allowing us to infer a plausible basis for the discrimination "assisting" claim against Senior Director Antonioli. We grant Mr. Diogenia leave to plead facts consistent with Rule 11 for a discrimination claim based on termination if exhausted and timely.

## III. Conclusion

We grant Comcast's and Senior Director Antonioli's motion to dismiss Mr. Diogenia's Title VII and Pennsylvania Human Relations Act hostile work environment claims as time barred. We dismiss Mr. Diogenia's federal and Pennsylvania hostile work environment claims with prejudice as plainly time barred and equitable tolling based on the untimely filing in New Jersey does not cure the extended delay. We grant Mr. Diogenia leave to file an amended Complaint to sufficiently plead facts within the 180- or 300-day limitations periods for a discrimination claim based on the July 3, 2024 termination due to his sexual orientation.

---

[1] Our Court of Appeals instructs we may consider Equal Employment Opportunity documents attached to a motion to dismiss. *Smith v. Pallman*, 420 F. App'x 208, 213 (3d Cir. 2011) (citing *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.")); *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006) (We "may consider . . . any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.") (citations and quotations omitted); *In re*

*Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied on in the complaint may be considered without converting the motion to dismiss into one for summary judgment. . . . [W]hat is critical is whether the claims in the complaint are based on an extrinsic document and not merely whether the extrinsic document was explicitly cited. Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.") (citations and quotations omitted).

Mr. Diogenia's Equal Employment Opportunity documents are integral to this case. The documents show Mr. Diogenia's July 25, 2025 dual-filing with the Pennsylvania Human Relations Commission and Equal Employment Opportunity Commission. *See* ECF 15-4 at 4. Mr. Diogenia requested the Equal Employment Opportunity Commission record his filing date as March 31, 2025 for an unexplained reason with no apparent connection to a filing. *See* ECF 15-5 at 2.

[2] ECF 1 ¶¶ 12, 14.

[3] *Id.* ¶¶ 1, 6.

[4] *Id.* ¶ 13.

[5] *Id.* ¶ 17.

[6] *Id.* ¶¶ 17–24.

[7] *Id.* ¶ 25.

[8] *Id.* ¶¶ 31–32.

[9] *Id.* ¶¶ 38–39.

[10] *Id.* ¶¶ 40–44.

[11] *Id.* ¶ 46.

[12] ECF 15-5 at 8.

[13] *Id.* at 7–8.

[14] *Id.* at 4.

[15] *Id.*

[16] ECF 1 ¶ 48.

[17] *Id.*

[18] *Id.* ¶ 49.

[19] *Id.*

[20] *Id.* ¶ 51.

[21] ECF 15-5 at 11.

[22] ECF 1 ¶ 52.

[23] ECF 15-5 at 13.

[24] *Id.*

[25] ECF 15-5 at 2. Mr. Diogenia did not provide this intake form for our review.

[26] ECF 15-4 at 2–4.

[27] *Id.* at 2–3.

[28] *Id.* at 3.

[29] ECF 15-5 at 2–3. Mr. Diogenia does not explain the significance of the March 31, 2025 date. We see no documents connecting his allegations to March 31, 2025.

[30] *Id.* at 4. Mr. Diogenia does not plead when the Equal Employment Opportunity Commission or the Pennsylvania Human Relations Commission addressed his claim.

[31] ECF 1 ¶¶ 54–71.

[32] *Id.* ¶ 65.

[33] ECF 15-1 at 6–8.

[34] ECF 1 ¶¶ 17–35, 63–71.

[35] *Id.* ¶ 52.

[36] *Id.*

[37] ECF 15-1 at 8.

[38] *Id.*

[39] *Id.* at 10–13.

[40] *Id.* at 14.

[41] ECF 16 at 1, 8.

[42] *Id.*

[43] *Id.* at 7–8. *See Mudie v. Phila. Coll. of Osteopathic Med.*, No. 21-2156, 2022 WL 1607544 (E.D. Pa. May 20, 2022), *aff'd,* No. 22-2132, 2023 WL 6210754 (3d Cir. Sept. 25, 2023). Judge Marston found the employer's termination to be a discrete act not able to be part of earlier hostile work environment.

[44] *Hayes v. New Jersey Dep't of Hum. Servs.*, 108 F.4th 219, 221 (3d Cir. 2024) (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (quoting 42 U.S.C. § 2000e–5(e)(1)).

[45] *Sexton v. New Jersey Dep't of Corr.*, No. 24-3118, 2025 WL 1482788, at *2 (3d Cir. May 23, 2025) (citing *Burgh v. Borough Council of the Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001)).

[46] *Simko v. United States Steel Corp.,* 992 F.3d 198, 204 n.5 (3d Cir. 2021); *Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017).

[47] ECF 15-5 at 2–3. We may consider Mr. Diogenia's Equal Employment Opportunity documents attached to Comcast's motion to dismiss. *See supra* note 1.

[48] *Mandel*, 706 F.3d at 165.

[49] *Id.* (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)).

[50] *See Morgan,* 536 U.S. at 122.

[51] *Mandel*, 706 F.3d at 165 (citing *Morgan*, 536 U.S. at 114).

[52] *Morgan*, 536 U.S. at 114.

[53] *Morgan*, 536 U.S. at 113.

[54] *Kahriger v. Becerra*, No. 23-4384, 2024 WL 2136011, at *5 (E.D. Pa. May 13, 2024) (citing *O'Connor* 440 F.3d 125, 127 (3d Cir. 2006)); *see also McCann v. Astrue*, 293 F. App'x 848, 850 (3d Cir. 2008) ("The law makes clear that discrete discriminatory acts that are actionable on their own may not be aggregated under a continuing violation theory.").

[55] *Mudie*, 2022 WL 1607544, at *12–13 (collecting cases).

[56] *Id.* at *14

[57] *Id.*

[58] *Id.* at *11–12.

[59] *Id.* at *13–16.

[60] ECF 1 ¶ 50.

[61] *Id.* ¶ 49.

---

[62] ECF 15-5 at 11.

[63] ECF 1 ¶¶ 50–52.

[64] *Mandel*, 706 F.3d at 165, 167.

[65] ECF 1 ¶¶ 33–35, 49.

[66] *Mandel*, 706 F.3d at 165 (quoting *O'Connor*, 440 F.3d at 127).

[67] ECF 1 ¶¶ 63–71.

[68] ECF 15-1 at 7.

[69] *Id.*

[70] *Id.*

[71] ECF 16 at 1.

[72] *Id.* at 1, 6.

[73] *Id.* at 6.

[74] *Id.* at 7–8.

[75] 43 PA. CONST. STAT. § 959(h).

[76] 16 PA. CODE § 42.14(a).

[77] *Clarkson v. Se. Pa. Transp. Auth.*, 700 F. App'x 111, 114 (3d Cir. 2017) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

[78] *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (citing *Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997)).

[79] *Nicole B. v. Sch. Dist. of Phila.*, 237 A.3d 986, 995–96 (Pa. 2020).

[80] *Id.*

[81] 16 PA. CODE § 42.14(a).

[82] *See Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001).

[83] *See e.g., Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314, 325 (E.D. Pa. 2018) (citing *O'Connor*, 440 F.3d at 127).

[84] ECF 15-5 at 2–3.

[85] *See* ECF 1.

[86] *Id.* ¶¶ 17–35, 46.

[87] *Id.* ¶¶ 49–52.

[88] ECF 1 ¶ 65.